NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ADAM LINDSAY MORTEMORE, *Appellant*,

CITY OF PHOENIX, *Intervenor*

No. 1 CA-CR 17-0135
FILED 12-5-2017

Appeal from the Superior Court in Maricopa County
No. CR2016-108907-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Edward F. McGee
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Phoenix City Prosecutor's Office, Phoenix
By Jennifer Booth
*Counsel for Intervenor*

---

## MEMORANDUM DECISION

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1    Adam Mortemore ("Mortemore") appeals his conviction for possession of marijuana, a class 1 misdemeanor. Mortemore contends that the superior court erred in denying his motion to suppress marijuana found in his pants pockets when it ruled that the police officers' stop and subsequent search did not violate the Fourth Amendment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2    On the evening of February 24, 2016, two Phoenix police officers saw Mortemore riding a bicycle in a residential alley. The officers drove into the alley and approached him. When one officer asked Mortemore if he had any weapons or illegal drugs, he answered he did not, but then immediately reached toward a visible bulge in his pants pockets.

¶3    The officers asked Mortemore if they could search his pants pockets, and he answered, "Okay, that's fine, then go ahead." The officers searched his pockets and found two baggies that contained a substance later determined to be marijuana. Mortemore was arrested and charged with possession of marijuana.

¶4    The court held a consolidated bench trial on the possession of marijuana charge and a hearing on Mortemore's motion to suppress the marijuana. At the hearing, the superior court (1) denied the motion to suppress, (2) found Mortemore guilty of possession of marijuana, and (3) imposed 12 months of unsupervised probation. Mortemore timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

¶5        Mortemore argues that the superior court erred in denying his motion to suppress challenging the legality of the stop and search that led to the discovery of marijuana.[1]

¶6        "We review a trial court's ruling on a motion to suppress for abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in a light most favorable to sustaining the trial court's ruling." *State v. Adair*, 241 Ariz. 58, 60, ¶ 9 (2016). Although we generally defer to the court's factual findings if the evidence reasonably supports them, we review the court's ultimate legal determination that the search complied with the Fourth Amendment *de novo*. *State v. Evans*, 237 Ariz. 231, 233, ¶ 6 (2015); *State v. Davolt*, 207 Ariz. 191, 202, ¶ 21 (2004). "We do not reweigh the evidence on appeal and will overturn the trial court's findings only if no substantial evidence supports them." *State v. Rodriguez*, 205 Ariz. 392, 397, ¶ 18 (App. 2003).

**I.        Reasonable Suspicion**

¶7        Mortemore argues that his presence in an alley did not create a reasonable suspicion that he was involved in criminal behavior.

¶8        Although the reasonable suspicion standard affords flexibility, investigatory stops cannot be arbitrary: "[t]he Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)). "Courts have struggled to articulate when evidence rises to a level that satisfies the reasonable suspicion

---

[1]        Mortemore also argues that officers could not detain him based on their suspicion that he had improperly used the alley as a thoroughfare in violation of Phoenix City Code section 36-61 because the ordinance is unconstitutionally vague and overbroad. However, Mortemore did not raise this issue before the superior court, and we therefore do not address it. *See State v. Lefevre*, 193 Ariz. 385, 389, ¶ 15 (App. 1998) ("Normally, failure to raise a claim at trial waives appellate review of that claim, even if the alleged error is of constitutional dimension."). Further, the court did not "find any factual or legal basis to invoke the city code" and instead determined that the officers had a reasonable suspicion to approach and contact Mortemore. "We are required to affirm a trial court's ruling if legally correct for any reason[.]" *State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7 (App. 2012). Therefore, we need not decide the constitutionality of § 36-61.

standard." *Evans*, 237 Ariz. at 234, ¶ 8. "In determining whether reasonable suspicion exists, officers and courts reviewing their actions take into account the totality of the circumstances—the whole picture of what occurred at the scene"—and "[f]rom that whole picture the officers must derive a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (internal citations and quotations omitted). "Although a mere unparticularized suspicion or hunch does not establish reasonable suspicion," courts must give consideration "to the specific reasonable inferences [that an officer] is entitled to draw from the facts in light of his experience." *Id.* (quoting *Terry*, 392 U.S. at 27); *see State v. Teagle*, 217 Ariz. 17, 24, ¶ 26 (App. 2007) ("In reviewing the totality of the circumstances, we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions."); *see also U.S. v. Arvizu*, 534 U.S. 266, 273-74 (2002) (reviewing reasonable-suspicion determinations in view of the totality of the evidence, giving due weight to officers' experience and specialized training).

¶9　　　　Here, the officer who saw Mortemore in the alley testified about his experience investigating residential burglaries and stated that these types of offenses commonly begin in an alleyway. Additionally, both officers testified that Mortemore was stopped because of their suspicion that he was engaging in a burglary. Based on this evidence, the superior court found that the officers were not unreasonable in making an investigative stop to determine the nature of Mortemore's activities. Reviewing the totality of the circumstances and giving weight to the officers' belief based on their experience, the court did not err in finding that the officers lawfully stopped Mortemore because of their reasonable suspicion that he was involved in criminal activity. *Evans*, 237 Ariz. at 234, ¶ 8; *Arvizu*, 534 U.S. at 273-74.

## II.　Mortemore Consented to the Search

¶10　　　　Mortemore contends that the superior court erred in denying his motion to suppress because he did not give the officers permission to search his pockets, and what permission was ostensibly given only applied to his left pocket, which did not contain any marijuana. He also argues that any consent he gave the officers was the product of coercion and he had no option but to consent.

¶11　　　　Pursuant to the Fourth Amendment of the United States Constitution and Article 2, Section 8, of the Arizona Constitution, persons are protected from unreasonable searches and seizures. *State v. Allen*, 216 Ariz. 320, 323, ¶ 9 (App. 2007). When a violation of the Fourth Amendment

4

or its state counterpart is determined to have occurred, the exclusionary rule generally requires the suppression at trial of any evidence directly or indirectly gained as a result of the violation. *State v. Schinzel*, 202 Ariz. 375, 382, ¶ 28 (App. 2002). "Although the Fourth Amendment generally prohibits warrantless searches, they are permitted if there is free and voluntary consent to search." *State v. Valenzuela*, 239 Ariz. 299, 301, ¶ 1 (2016).

¶12        Under the consent exception to the warrant requirement, the State must show a person's consent to search by a preponderance of the evidence. *Valenzuela*, 239 Ariz. at 302, ¶ 11. Moreover, the consent must be intelligently and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 235-36 (1973). Whether consent to search has been voluntarily given is a question determined by the totality of the circumstances. *State v. Paredes*, 167 Ariz. 609, 612 (App. 1991). Consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228. The question is whether a reasonable person in that specific circumstance would have felt free to refuse a search. *United States v. Drayton*, 536 U.S. 194, 196 (2002).

¶13        Here, although Mortemore denied that he consented, both officers testified that he agreed to their request to search his pockets. Thus, the record supports the superior court's finding that Mortemore consented to the search.

¶14        The record similarly supports the court's finding that Mortemore's consent was voluntary. The court considered evidence that Mortemore was cooperative with the officers and was willing to show them what he had in his pockets. Deferring to the court's factual findings and viewing the evidence in the light most favorable to upholding the court's decision, we find that the court did not err in finding Mortemore voluntarily consented to the search. *Adair*, 241 Ariz. at 60, ¶ 9.

¶15        Therefore, the court did not abuse its discretion in denying Mortemore's motion to suppress.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm Mortemore's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA